**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**Greif, Inc.,**

        **Plaintiff,**

    v.                       **Case No. 2:08-CV-509**
                                   **JUDGE EDMUND A. SARGUS JR.**
                                   **Magistrate Judge Mark R. Abel**

**Gary M. Corte,**

        **Defendant.**

## OPINION AND ORDER

This matter is before the Court following a hearing on Plaintiff's Motion for Preliminary Injunction. (Doc. #5.) For the reasons that follow, the relief sought by Plaintiff is granted.

### I.

This case involves a dispute between competitors in the corrugated box and packaging industry. In 1996, Plaintiff Greif acquired Aero box Company, located in Roseville, Michigan, from Defendant Gary Corte and two other members of his family. Corte signed an employment agreement with Greif and became the Plant Manager of the manufacturing facility in Roseville. Corte managed the plant for ten years; he voluntarily resigned as Plant Manager on October 31, 2006. Greif retained Corte as a pricing advisor or estimator for the Roseville facility until October 31, 2007.

Corte's employment agreement became a month-to-month agreement, terminable at-will, after the initial three-year Term (beginning November 8, 1996). The agreement contained a non-competition covenant, wherein Corte agreed that he would not:

Directly or indirectly for Employee or for others, in any geographic area where Employer or any of its subsidiaries engaged in the container board business are conducting any business activities as of the date of termination of the employment relationship or have during the previous twelve months conducted any business activities: (i) engage in any business competitive with the business conducted by Employer; (ii) render advice or services to, or otherwise assist, any other person, association, or entity who is engaged, directly or indirectly, in any business competitive with the business conducted by Employer; or (iii) induce any employee of Employer or any of its affiliates to terminate his or her employment with Employer or its affiliates, or hire or assist in the hiring of any such employee by person, association, or entity not affiliated with Employer.

\*\*\*

These non-competition obligations shall extend until the latter of (a) the expiration of the Term or (b) three (3) years after the termination of the employment relationship; provided however that in the event of an Involuntary Termination of Employee, the non-competition obligations contained in this Agreement shall immediately terminate.

Employment Agreement at Sec. 6.1, Pl.'s Mot. at Ex. 1.

Section 3.1 of the agreement defines "Involuntary Termination" as: "the termination of Employee's employment by Employer prior to the expiration of the Term. . . ." The parties dispute whether Corte resigned voluntarily, or was forced to resign by Greif. There is no dispute that Corte is currently competing against Greif and soliciting Greif's customers for business.

## II.

In considering a request for preliminary injunction, the district court is to consider the following: (1) the likelihood that the movant will succeed on the merits, (2) whether the movant will suffer irreparable harm without the injunction, (3) the probability that granting the injunction will cause substantial harm to others and (4) whether the public interest will be advanced by issuing the injunction. *Lorillard Tobacco Co. v. Amouri's Grand Foods, Inc.,* 453 F.3d 377, 380 (6th Cir. 2006), citing *Six Clinics Holding Corp., II v. Cafcomp Sys., Inc.,* 119 F.3d 393, 399 (6th Cir. 1997). "In making its determination, the district court is required to make specific findings concerning each of the four factors, unless fewer factors are dispositive of the issue." *Id.* Nevertheless, the foregoing are "factors to be balanced, not prerequisites that must be met.

2

Accordingly, the degree of likelihood of success required may depend on the strength of the other factors." *In re DeLorean Motor Co.,* 755 F.2d 1223, 1229 (6th Cir. 1985).

> a)  Likelihood of Success on the Merits

The Court finds that it is likely that Plaintiff will prevail on the merits of its claim for breach of contract.[1]  Corte does not dispute that he is competing against Greif in the geographic area covered by his employment agreement.  Corte also did not present evidence disputing the reasonableness of the non-competition covenant in the agreement.  Corte admits that he is using knowledge, learned at least in part while he was employed by Greif, in soliciting business from Greif's customers in the Detroit area.

The parties dispute whether Plaintiff's resignation was "voluntary."  The Court finds that, while plainly there was no meeting of the minds as to the length of Corte's job as a pricing estimator, the dispute does not affect the outcome.  The definition of "Involuntary Termination" is limited to termination occurring during the initial three-year term of the agreement.  After the expiration of the term, Corte's resignation (or dismissal) was governed by Article 4 of the agreement, allowing for at-will termination by either party and enforcement of the non-competition covenant by Greif.  Because Corte's separation from Greif on October 31, 2007, occurred after the expiration of the three-year term of the employment agreement, his departure could not fall within the agreement's definition of "Involuntary Termination."  Accordingly, the non-competition covenant remained in effect upon Corte's departure from the Company, and prohibits Corte from competing against Greif for a period of three years.

---

[1]    Plaintiff also asserts a claim for violation of the Ohio Uniform Trade Secrets Act. This claim was not addressed at the hearing, and the Court finds it unnecessary to consider the claim at this time, because the injunction is adequately grounded on the likelihood of Plaintiff's success on its claim for breach of contract.  Corte's employment agreement contains a covenant prohibiting disclosure of Greif's confidential information during or after Corte's employment at Greif, even in the absence of statutory prohibitions, and there is no dispute that Corte is still bound to comply with the terms of such covenant.

### b) Irreparable Harm to Greif

As set out above, evidence at the hearing established that Defendant Corte is using at least some confidential and proprietary information and trade secrets that he acquired knowledge of while employed by Greif. There are no allegations that Corte took Greif documents when he left the Company; however, the evidence established that he is using his knowledge of Greif's business practices, customers, and pricing in order to compete with Greif and solicit Greif's customers. Greif's employment agreement contains non-compete and non-disclosure provisions to prevent this precise harm. (Employment Agreement at Sections 6.1 and 5.2).

The Court finds that Greif has suffered and will continue to suffer irreparable harm in the form of customers and business lost to Corte. Although lost profits are arguably quantifiable, and therefore not a legitimate basis for preliminary injunctive relief, the Court is persuaded that Greif "'stands to lose significant benefits of its years of development, experience and training if [Corte] remain[s] free to exploit [his] intimate knowledge of [Greif's] customers." *Chem-Trend, Inc. v. McCarthy*, 780 F.Supp. 458, 462 (E.D. Mich. 1991), quoting *Ecolaire, Inc. v. Crissman*, 542 F.Supp. 196 (E.D. Pa. 1982). Such losses are not easily quantifiable or prone to evidentiary proofs. "Because realistically it would not be possible to measure plaintiff's actual loss of customers and good will that will necessarily occur, the injury to plaintiffs would likely be irreparable." *C & A Carbone, Inc. v. Town of Clarkstown*, 770 F.Supp. 848, 854 (S.D. N.Y. 1991).

### c) Balance of Hardships

There is no question that an injunction preventing Corte from soliciting business from Greif's customers will cause harm to Corte. However, the harm to Greif is more compelling as Greif will continue to see its business eroded if Corte is not enjoined. Greif also faces injury

4

from the continued misuse of its confidential information and trade secrets, and from the potential loss of goodwill with current customers.

        d)  Public Interest

The Court finds that granting an injunction in this case furthers the public interest in the enforcement of valid contracts, "the lynchpin of all commercial activity in society." *Avery Dennison Corp. v. Kitsonas*, 118 F.Supp.2d 848, 855 (S.D. Ohio 2000). Further, discouraging unfair trade practices and the misuse of confidential business information promotes the public interest in a free and open, competitive market.

## III.

For these reasons, Plaintiff Greif, Inc.'s Motion for Preliminary Injunction (Doc. #5) is GRANTED. IT IS HEREBY ORDERED that Defendant Gary M. Corte is ENJOINED from violating the non-competition and non-disclosure covenants contained in his employment agreement with Greif, Inc. Specifically, Defendant is enjoined from a) soliciting, doing business with, designing or manufacturing products for any current or former Greif customer; b) competing in the container board business, which includes the manufacture and sale of corrugated products and packaging materials; c) rendering advice, services or otherwise assisting any other person or entity engaged in the above mentioned business operations; d) inducing any Greif employee to leave his or her employment and/or hiring, employing or working in concert with any current or former Greif employees; and e) using or disclosing confidential business information or trade secrets of Greif.

These restrictions shall apply in the states of Ohio and Michigan, and shall be in effect for a period of three years from the date of Defendant Corte's separation from Greif on October 31, 2007.

Plaintiff's bond shall continue pending resolution of this matter on the merits of Plaintiff's claims.

**IT IS SO ORDERED.**

6-18-2008
_____
**DATE**

_____
**EDMUND A. SARGUS, JR**
**UNITED STATES DISTRICT JUDGE**